UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:                                               CIVIL MISCELLANOUS ACTION

UMAREX, USA, INC.                                    NO. 15-69-BAJ-EWD

                                                     UNDERLYING ACTION:

MICHAEL SWOBODA
                                                     CIVIL ACTION
VERSUS
                                                     NO. 14-19-EWD
KARL MANDERS, ET AL.

**<u>RULING ON UMAREX USA, INC'S MOTION TO QUASH CERTAIN NON-PARTY DISCOVERY OR, ALTERNATIVELY, FOR PROTECTIVE ORDER</u>**

      Before the Court is the Motion to Quash Certain Non-Party Discovery or, alternatively, for Protective Order[1] (the "Motion to Quash") filed by Umarex USA, Inc. ("Umarex USA"). The Motion to Quash is opposed by Michael Swoboda ("Swoboda"), and Umarex USA has filed a reply.[2] For the reasons set forth herein, the Motion to Quash[3] is GRANTED IN PART AND DENIED IN PART. Specifically, the Court DENIES Umarex USA's request for an order quashing the subpoena. The Court GRANTS Umarex USA's request for a protective order narrowing the scope of discovery as set forth herein.

    **I.    Background**

      The underlying suit related to this miscellaneous action is *Michael Swoboda v. Karl Manders, et al.*, No. 14-19, United States District Court, Middle District of Louisiana (the

---

[1] R. Doc. 1.

[2] R. Docs. 5 & 8.

[3] R. Doc. 1.

1

"Underlying Action"). Swoboda is the president of German Sports Guns GmbH ("GSG"), a German firearms company.[4] In the Underlying Action, Swoboda alleges that Continental Incorporated, Inc. ("Continental") was hired by Heckler & Koch, Inc. ("H&K") to investigate Swoboda's alleged infringement of H&K's trademark on its G36 Airsoft pellet gun design.[5] Swoboda alleges that Continental's investigation was "really a scheme to unlawfully entrap, charge, and convict" him of a crime and thereby harm Plaintiff's professional reputation and "further Continental's and H&K's business."[6]

On September 26, 2014, Swoboda filed a motion to compel in the Underlying Action against Continental (the "Motion to Compel") seeking, *inter alia*, production of documents related to Continental's investigation.[7] Specifically, Swoboda sought "any and all communications between and among Defendants, H&K, and the various third-parties which were involved in the criminal investigation."[8] In response to Swoboda's requests, Continental asserted that many of the documents requested were not related to its investigation of Swoboda or his arrest, and instead sought documents about Continental's other intellectual property investigations.[9] The Court ruled on the Motion to Compel on April 20, 2015.[10] Therein, the Court found that many of Swoboda's document requests were too broad and encompassed documents not relevant to Swoboda's claims.[11] Specifically, the Court held that "[i]nformation/documents concerning the investigation

---

[4] Underlying Action, R. Doc. 77, ¶ 1.

[5] Underlying Action, R. Doc. 77, ¶¶ 13-14.

[6] Underlying Action, R. Doc. 77, ¶ 15.

[7] Underlying Action, R. Doc. 26.

[8] Underlying Action, R. Doc. 26-1, p. 5.

[9] Underlying Action, R. Doc. 31, p. 1. Continental also asserted that many of the requests sought documents protected by the attorney-client and/or work product privileges. Umarex USA's Motion to Quash does not reference or depend upon this aspect of Swoboda's requests to Continental.

[10] Underlying Action, R. Doc. 49.

[11] Underlying Action, R. Doc. 49, p. 6.

2

performed by Continental that related to [Swoboda's] activities with the G36 or his arrest are relevant to the issues in this case. To the extent the plaintiff's requests for production call for production of documents outside this scope, such information and documents are not reasonably calculated to lead to admissible evidence and do not need to be produced by Continental."[12] This Court further noted that "information related to other cases and investigations is not discoverable in this case…."[13]

On July 1, 2015, Swoboda issued a subpoena duces tecum to Umarex USA to produce documents (the "Subpoena").[14] Thereafter, Umarex USA filed the instant Motion to Quash. Umarex USA asserts that the Subpoena is overbroad and seeks irrelevant documents outside the scope set forth by this Court in its April 20, 2015 ruling on the Motion to Compel in the Underlying Litigation. Based in part on the alleged overbreadth of the Subpoena, Umarex USA also argues that the Subpoena "unnecessarily sweeps in documents subject to the attorney-client and work product privileges."[15] Umarex USA asks this Court to quash the Subpoena in all respects or, alternatively, to enter a protective order that: (1) "[n]arrows the scope of discovery to be produced to information and documents concerning the investigation performed by Continental that related to Michael Swoboda's activities with the G36 or Mr. Swoboda's arrest;" (2) "[s]pecifies that the responding party is Umarex USA and that Umarex USA has no obligation to respond on behalf of other entities or persons;" and (3) "[s]pecifies that the production is limited solely to Umarex

---

[12] Underlying Action, R. Doc. 49, p. 8.

[13] Underlying Action, R. Doc. 49, n. 4.

[14] R. Doc. 2-1. Per its Motion to Quash, Umarex USA explains that it is "a distributor of HK licensed products" R. Doc. 2, p. 12.

[15] R. Doc. 1, p. 1.

USA's non-privileged communications and allows for the production of a privilege log at the time of the appropriately narrowed production."[16]

## II. Law and Analysis

### A. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).[17]

A subpoena may command a non-party to produce designated documents, electronically stored information, or tangible things in his possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). On timely motion, the court must quash or modify a subpoena if it "requires disclosure of privileged or otherwise protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s

---

[16] R. Doc. 1, pp. 1-2.

[17] Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015 to clarify the scope of discovery. The 2015 amendments "restor[e] the proportionality factors to their original place in defining the scope of discovery." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes (2015). "The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending." *American Federation of Musicians of the U.S. and Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015). Given the "restorative nature" of the amendments, the court finds that application of the amended version of Rule 26(b)(1) is "both just and practicable." *See*, *Williams v. U.S. Environmental Services, LLC*, 2016 WL 684607, at n. 2 (M.D. La. Feb. 18, 2016).

"good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Here, Umarex USA argues that good cause exists for entry of a protective order limiting the scope of the Subpoena because the requests as drafted arguably reach related companies over which Umarex USA has no control and because the requests seek irrelevant documents.

### B. The Subpoena to Umarex USA

The Subpoena seeks all internal "Umarex" communications and all communications between "Umarex" and Continental or H&K "pertaining or relating to German Sports Guns, GmbH, and/or Michael Swoboda from January 1, 2011 through the present date."[18] "Umarex" is defined as "any and all divisions, and/or related entities, of Umarex, and includes all current and former representatives or other persons acting on its behalf or request."[19] As discussed herein, the Court finds the Subpoena as currently drafted is impermissibly broad. However, because the Subpoena as limited by this Ruling seeks discoverable documents, the Court DENIES Umarex USA's request to quash the Subpoena in its entirety.

#### 1. Definition of "Umarex"

Umarex USA explains that although the subpoena was directed to "Umarex USA, Inc.," the definition of "Umarex" as set forth in the document requests includes "any and all divisions, and/or related entities, of Umarex" and "all current and former representatives or other persons acting on its behalf." Umarex USA asserts that this definition is intentionally broad and is an

---

[18] R. Doc. 2-1.

[19] R. Doc. 2-1.

attempt to reach documents held by Umarex Sportwaffen GmbH ("Umarex Sportwaffen"), a separate and independent entity over which it does not have control.

In his opposition to the Motion to Quash, Swoboda explains that "[d]uring discovery in the [Underlying Action], the names of individuals associated with Umarex Sportwaffen (Monika Brauetigam and Wulf-Heinz Pflaummer) appeared in a privilege log produced by Continental….Moreover, Mr. Swoboda has been informed that Umarex Sportwaffen was involved in having Mr. Swoboda arrested."[20] Thus, it appears that the primary purpose of the Subpoena is to obtain documents from Umarex Sportwaffen.

Umarex USA asserts that it "is neither a parent nor a subsidiary of Umarex Sportwaffen GmbH, but rather a distributor of products in the United States."[21] Umarex USA further argues that the Subpoena "is an improper attempt by Swoboda to use one subpoena to avoid process and procedures required at law for serving separate subpoenas on distinct entities"[22] and that the "proper procedure for serving a subpoena on a foreign entity is through the Hague Convention."[23]

Under Fed. R. Civ. P. 45, a subpoenaed party may be commanded to produce "designated documents, electronically stored information, or tangible things in that person's possession, custody, or control….". Umarex USA and Swoboda agree that in some circumstances, a non-party subsidiary corporation may have sufficient control over documents in the possession of its foreign parent or affiliate corporation such that the subsidiary will be compelled to produce documents. As explained by Swoboda, "[t]o determine whether a domestic corporation must produce documents in the possession of a foreign parent or affiliate, 'courts have focused on whether the

---

[20] R. Doc. 5.

[21] R. Doc. 2, p. 10.

[22] R. Doc. 2, p. 9.

[23] R. Doc. 2, p. 10.

6

U.S. corporation has the requisite degree of control over the documents sought.' The degree of control is determined by the 'closeness of the relationship between the entities."[24]

Mr. Swoboda asserts that, based on its website, "Umarex Sportwaffen is [Umarex USA's] parent company, and Umarex USA develops and markets airguns under brands licensed by Umarex Sportwaffen, including H&K's airguns which gave rise to the Indiana Litigation[25] and, ultimately, the Louisiana Suit."[26] Mr. Swoboda further argues that Umarex USA concedes it has an interest in the Indiana Litigation and that "[b]oth Umarex USA and Umarex Sportwaffen appear to be part of the PW Group, of which Mr. Pflaummer is apparently President."[27]

In response, Umarex USA submits the Declaration of Adam Blalock, the President of Umarex USA.[28] Therein, Mr. Blalock asserts that Umarex USA is a privately owned company of which he owns 10% and PW International GmbH owns 90%.[29] PW International GmbH is owned by two individuals.[30] Mr. Blalock goes on to assert that "[n]either Umarex Sportwaffen GmbH nor Umarex Sportwaffen GmbH & Co. KG has an ownership interest in Umarex USA, Inc., or PW International GmbH"[31] and that "[n]either Umarex USA, Inc. nor PW International GmbH has an

---

[24] R. Doc. 5, p. 7. Citing *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 2009 WL 780890, at *2 (N.D. Ill. March 23, 2009). "A sufficiently close corporate relationship, or 'close coordination,' in which the subsidiary has the power to produce documents held by the parent may be evidenced by: (1) adequate ownership share in the subsidiary by the parent; (2) interlocking management structures; (3) sufficient control exercised by the foreign parent over the subsidiary's directors, officers, and employees; and (4) a connection to the transaction at issue." *Id.* (citing *Flavel v. Svedala Indus.*, 1993 WL 580831, at *13 (E.D. Wis. Dec. 13, 1993)).

[25] As discussed in the following section, H&K and GSG have a long history of litigation in the Southern District of Indiana related to the alleged intellectual property infringement of H&K's MP5 firearm.

[26] R. Doc. 5, pp. 8-9.

[27] R. Doc. 5, p. 9.

[28] R. Doc. 8-1.

[29] R. Doc. 8-1, ¶ 5.

[30] R. Doc. 8-1, ¶ 6.

[31] R. Doc. 8-1, ¶ 9. Umarex USA asserts that "[a]lthough Umarex Sportwaffen GmbH & Co. KG and Umarex Sportwaffen GmbH have similar names, they are entirely different companies with different ownership structures." R. Doc. 8, p. 2. Mr. Blalock asserts that "Umarex Sportwaffen GmbH & Co. KG is owned 49-percent by Umarex Sportwaffen GmbH" with the remaining 51% interest owned by four individuals. R. Doc. 8-1, ¶ 7. "Umarex

7

ownership interest in Umarex Sportwaffen GmbH or Umarex Sportwaffen GmbH & Co. KG."[32] He asserts that "Umarex USA has no control of documents or information in the possession of Umarex GmbH."[33]

Mr. Swoboda bears the burden of establishing that Umarex USA has the requisite level of control over Umarex Sportwaffen. *See*, *e.g.*, *Monroe's Estate v. Bottle Rock Power Corp.*, 2004 WL 737463, at *10 (E.D. La. April 2, 2004) ("The burden is on the party seeking discovery to make a showing that the other party has control over the material sought."); *Goh v. Baldor Elec. Co.*, 1999 WL 20943, at * 2 (N.D. Tex. Jan. 13, 1999) ("Plaintiffs bear the burden of proving that Ernst & Young LLP's relationship to both Ernst & Young Singapore and Ernst & Young Thailand indicates control over the document."). Because Swoboda has not demonstrated that Umarex USA has control over Umarex Sportwaffen, the Court agrees that the Subpoena should be limited to Umarex USA.

### 2. Scope of Document Requests

Umarex USA asks the Court to quash or limit the Subpoena, arguing that the Subpoena is overbroad to the extent it seeks documents outside of this Court's previous relevancy ruling in the Underlying Action. Specifically, Umarex USA explains that "[s]ince 2008, GSG has been involved in an ongoing dispute with Heckler & Koch, Inc. and Heckler & Koch GmbH (together 'HK'). That ongoing dispute involves HK's iconic MP5 guns and GSG's infringement of HK's trade dress in those guns and has spawned two rounds of litigation, including litigation that is still pending, namely *Heckler & Koch, Inc. v. German Sports Guns GmbH*, S.D. Ind., Cause No. 1:11-

---

Sportwaffen GmbH is a privately-held company owned by three individuals, in varying percentages of ownership." R. Doc. 8-1, ¶ 8.

[32] R. Doc. 8-1, ¶ 10.

[33] R. Doc. 8-1, ¶ 12.

cv-1108-SEB-TAB." (the "Indiana Litigation").[34] Umarex USA asserts that as worded, the Subpoena seeks documents related to this separate infringement action.

In response, Swoboda asserts that "[i]n April 2013, [he] traveled from Germany to the United States to attend a settlement conference in the Indiana Litigation. During that court conference, on April 19, 2013, and pursuant to the invalid arrest warrant, United States Marshals arrested [him]...."[35] Mr. Swoboda explains that he "has been informed that Umarex Sportwaffen was involved in having [him] arrested. Therefore, Mr. Swoboda issued the instant subpoena to Umarex USA."[36] Mr. Swoboda asserts that because he was "wrongfully arrested while attending a settlement conference related to the Indiana Litigation, which involved the MP5 firearm, that information is reasonably calculated to lead to the discovery of admissible evidence regarding Continental's investigation related to Mr. Swoboda or Mr. Swoboda's arrest, including any involvement by Umarex USA or Umarex Sportwaffen."[37]

In this Court's ruling on Swoboda's Motion to Compel production from Continental in the Underlying Action, the Court found that "[i]nformation/documents concerning the investigation performed by Continental that related to the plaintiff's activities with the G36 or his arrest are relevant to the issues in this case. To the extent the plaintiff's requests for production call for production of documents outside this scope, such information and documents are not reasonably calculated to lead to admissible evidence and do not need to be produced by Continental."[38] The Court agrees that the Subpoena should similarly be limited to documents related to the

---

[34] R. Doc. 2, p. 11.

[35] R. Doc. 5, p. 3.

[36] R. Doc. 5, p. 4.

[37] R. Doc. 5, p. 5.

[38] Underlying Action, R. Doc. 49, p. 8.

9

investigation of alleged infringement by Swoboda/GSG of the G36 and Swoboda's arrest. To the extent documents relevant to the Indiana Litigation are also related to Mr. Swoboda's arrest or alleged infringement of the G36, such documents would be properly discoverable in the Underlying Action.[39] However, the Court agrees with Umarex USA that the Subpoena as currently worded, and which requests "any and all communications" "pertaining or relating to German Sports Guns, GmbH, and/or Michael Swoboda, from January 1, 2011 through the present date" is impermissible broad and seeks irrelevant information.

Accordingly, the Court GRANTS IN PART Umarex USA's Motion to Quash. Umarex USA is ORDERED to produce: (1) any and all internal communications between employees of Umarex USA pertaining or relating to Mr. Swoboda's or GSG's activities with the G36 (including Continental's investigation thereof) or his April, 2013 arrest; (2) any and all communications between Umarex USA and any current or former employees of Heckler & Koch GmbH and/or Heckler & Koch, Inc. pertaining or relating to Mr. Swoboda's or GSG's activities with the G36 (including Continental's investigation thereof) or his April, 2013 arrest; and (3) any and all communications between Umarex USA and any current or former employees of Continental pertaining or relating to Mr. Swoboda's or GSG's activities with the G36 (including Continental's investigation thereof) or his April, 2013 arrest. To the extent the Subpoena calls for production of documents outside this scope, such information and documents are not reasonably calculated to lead to admissible evidence and do not need to be produced by Umarex USA.[40]

---

[39] Umarex USA "agrees that to the extent responsive and unprivileged documents exist, and are in the possession and control of Umarex USA, that related to the arrest of Mr. Swoboda, those documents fall within the scope of discovery as defined by the Louisiana District Court." R. Doc. 2, p. 8.

[40] The Court declines to place a temporal limitation on these requests. Any documents falling within the scope of the Subpoena as limited by this Ruling shall be produced.

### 3. Privilege Issues

Finally, Umarex USA explains that its "objection to preparing a privilege log is directly related to its objections to the scope of the requests. If the subpoena had been properly limited to the scope of discovery allowed by the District Court, Umarex USA would have responded and prepared an appropriate privilege log, if necessary."[41] Accordingly, based on this Court's ruling limiting the scope of the Subpoena to Umarex USA and the documents in its custody or control pertaining or relating to Mr. Swoboda's or GSG's activities with the G36 (including Continental's investigation thereof) or his April, 2013 arrest, the Court finds that Umarex USA's concerns regarding its ability to review the documents to be produced and prepare the required privilege log if necessary are adequately addressed without further order from this Court.

## III. Conclusion

For the reasons set forth herein, Umarex USA's Motion to Quash Certain Non-Party Discovery or, alternatively, for Protective Order[42] is GRANTED IN PART AND DENIED IN PART.[43]

Signed in Baton Rouge, Louisiana, on May 19, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] R. Doc. 8, p. 5.

[42] R. Doc. 1.

[43] The Court declines to reapportion expenses for the Motion to Quash. *See*, Fed. R. Civ. P. 37(a)(5)(C). *See also*, *Kempton v. Maritime Systems, Inc.*, 2013 WL 3070890, at *11 (E.D. La. June 17, 2013) (where discovery requests are granted in part and denied in part, "Court has discretion to apportion attorney's fees and costs under Rule 37(a)(5)(C). The Court exercises its discretion and declines to award fees in this instance."); *Dugas v. Mercedes-Benz USA, LLC*, 2014 WL 458083, at *2 (W.D. La. Feb. 3, 2014) ("Having granted the motion in part and denied it in part…[an award of costs and attorneys' fees] is not mandatory. Instead, the undersigned is authorized by Fed. R. Civ. P. 37(a)(5)(C) to apportion the reasonable expenses of the motion in his discretion. In this case, there is no compelling reason for the imposition of such an award. Therefore, to the extent [movant's] motion seeks the recovery of costs, expenses, or attorneys' fees, the motion is denied.").

11